IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| QUINTEZ TALLEY | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| C/O GRIESMER, SGT. ALIMON, C/O WOODWARD, LT. KULL, M. NASH, JOHN E. WETZEL, C/O DALE SCHOENBERGER and PA DEPT. OF CORRECTIONS | : | NO. 19-1587 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                          November 4, 2019

Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil action asserting that the defendants violated the Americans with Disabilities Act (ADA) and the Eighth and Fourteenth Amendments.[1] He also claims they breached a settlement agreement in an unrelated matter when they punished him for manifesting his mental illness and denied him psychological services.[2] He has sued the Pennsylvania Department of Corrections (DOC), Secretary Wetzel, Lieutenant Kull, Sergeant Aleman, Psychologist Nash, and Corrections Officers Griesemer, Schoeneberger, and Woodward.[3]

---

[1] May 29, 2019 Order (ECF No. 5). This is the twelfth of 14 civil actions that Talley has filed in this district since 2018 against Department of Corrections (DOC) personnel and others working at prison institutions.

[2] Talley states in the opening paragraph of his complaint that this action is authorized by the ADA and Rehabilitation Act (RA), 29 U.S.C. § 701, but makes no further mention of the RA. *Id.* ¶ 1. The RA, "the first federal statute to provide broad prohibitions against discrimination on the basis of disability, applies only to programs and activities receiving federal financial assistance." *Yeskey v. Commw. of Pa. Dep't of Corrs.*, 118 F.3d 168, 170 (Pa. Commw. Ct. 1997). Talley does not allege that the DOC, a Pennsylvania state agency, receives federal assistance. In addition, our analysis of Talley's ADA claim would apply to any RA claim because the RA is "substantially similar" to the ADA. *Id.*

[3] Compl. (ECF No. 2). Talley does not state Wetzel's and Nash's titles and misspells Aleman's last name. The correct titles and spellings are supplied by defendants.

1

Defendants have moved to dismiss for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA) and failure to state a claim. They also invoke qualified and sovereign immunity. Because Talley fails to state any claims, we shall grant the motion and dismiss the complaint.[4]

## Background[5]

On May 1, 2017, Talley refused to return a razor after Griesemer verbally harassed him and called him names.[6] Woodward and Schoeneberger attempted to use Talley's breakfast tray "as a bargaining chip in exchange for the razor."[7] Talley responded by cutting himself and stating that he would kill himself.[8] They offered to allow him to speak to Kull, but he still refused to relinquish the razor.[9] When Nash and Aleman arrived, Talley told them he was suicidal and would not surrender the razor until he was allowed to report Griesemer.[10] After Nash and Aleman left, Aleman returned wearing a rubber glove and "insisting" that Talley relinquish the razor.[11] Aleman's "primary concern remained with [Talley] giving up the razor."[12] Talley continued to refuse, and Aleman left to inform Kull.[13]

---

[4] Talley argues that passing mandatory screening of his complaint under 28 U.S.C. §§ 1915(e) and 1915A prohibits defendants from later filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Pl.'s Brief Response to Defs.' Mot. to Dismiss at 2 (ECF No. 16); *see also* May 29, 2019 Order. He is wrong. Defendants may move to dismiss any claims that survive the court's preliminary screening. *See, e.g., Moore v. Middlesex Cty. Prosecutors Office*, 738 F. App'x 100, 102 (3d Cir. 2018) (noting district court dismissed claim under Rule 12(b)(6) after allowing it to proceed beyond § 1915A screening).

[5] The following facts are taken from the complaint and attached documents. For the purposes of this motion, they are considered as true.

[6] Compl. ¶¶ 6-9, 11.

[7] *Id.* ¶ 11.

[8] *Id.* ¶ 12.

[9] *Id.* ¶ 14.

[10] *Id.* ¶¶ 15-16, 19.

[11] *Id.* ¶ 20.

[12] *Id.* ¶ 19.

[13] *Id.* ¶ 20.

While performing medication rounds, Nurse George saw Talley cutting himself and went to retrieve Kull.[14]

When Kull arrived and Talley reported Griesemer's name-calling, Kull suggested it was accurate.[15] George returned and attempted to clean Talley's cuts, but Kull initially insisted that George clean them through the cell door.[16] Talley objected and was treated in the medical triage area instead.[17]

Talley appeared before Hearing Examiner Yodis for a misconduct hearing on May 11, 2017, on charges arising out of the incident.[18] Talley pled not guilty and claimed that Griesemer, Schoeneberger and Woodward demonstrated "deliberate indifference" by leaving him bleeding in his cell for over an hour.[19] The misconduct was dismissed due to Talley's "self-injurious behavior."[20]

Talley alleges that the DOC, Wetzel and Griesemer violated the ADA and the Eighth and Fourteenth Amendments, and breached the Settlement Agreement and General Release (Settlement Agreement) in *Disability Rights Network of Pennsylvania v. Wetzel*, No. 1:13-CV-00635 (M.D. Pa. Jan. 9, 2015) (ECF No. 59) when they charged him with misconduct for cutting himself. He also claims that Griesemer, Woodward,

---

[14] *Id.* ¶ 21. It is not clear if "George" is the first or last name of Nurse George, a non-party.
[15] *Id.* ¶ 22.
[16] *Id.* ¶ 23.
[17] *Id.* ¶¶ 24-25.
[18] *Id.* Ex. 1 at 4.
[19] *Id.* Ex. 1 at 2, 4.
[20] *Id.* Ex. 1 at 4.

Schoeneberger, Kull, Aleman and Nash violated the ADA and the Eighth and Fourteenth Amendments when they failed to provide him access to a mental health professional.[21]

Defendants move to dismiss for failure to exhaust administrative remedies because Talley failed to follow the mandatory administrative process.[22] They also argue that he fails to state a claim and that they are immune from suit.

## Standard of Review

Pursuant to Rule 12(b)(6), a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established.

---

[21] *Id.* ¶¶ 29-35. The ADA claims are brought against Defendants in their official capacity only. *Id.* ¶ 29 n.3.

[22] Because the exhaustion issue arises from indisputably authentic documents, we may decide it without converting the motion to one for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 228 (3d Cir. 2004) (exhaustion "turn[ed] on indisputably authentic documents related to [prison] grievances," which the court may consider without converting a motion to dismiss into a motion for summary judgment).

4

In assessing the sufficiency of a complaint, a court must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an entitlement to relief. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks and citations omitted) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

## Analysis

Defendants argue that Talley failed to exhaust his administrative remedies under the PLRA.[23] Exhaustion is not a jurisdictional requirement. *Nyhuis v. Reno*, 204 F.3d 65, 69 n.4 (3d Cir. 2000).

Defendants point out that Talley never filed a grievance pursuant to DC-ADM 804, "Inmate Grievance System," about the events in question. But, that policy statement provides:

> Issues concerning a specific inmate misconduct charge [or] ***statements written within a misconduct*** . . . will not be addressed through the Inmate Grievance System and must be addressed through Department policy **DC-ADM 801, "Inmate Discipline"** . . . . ***Issues other than specified above must be addressed through the Inmate Grievance System.***

DC-ADM 804 § 1.A.7 (emphasis in original).

Talley was charged with misconduct for refusing to return the razor and threatening to cut any prison personnel who attempted to take it from him.[24] He defended against the charge on the bases that the correctional officers were deliberately indifferent when

---

[23] Defs.' Memo. in Supp. of Mot. to Dismiss (ECF No. 10) at 5-8.

[24] Compl. Ex. 1 at 1.

5

they left him alone in his cell while he continued to cut himself. He contends that he should not have been charged for this self-injurious behavior.[25] The hearing examiner found him not guilty and dismissed the charges.[26] It is not clear what, if anything, remained to be addressed under DC-ADM 801. On the other hand, it is not clear that Talley's two-sentence response to the charges encompasses all the conduct at issue in his complaint.

Because it is unclear whether Talley exhausted his administrative remedies, we consider the merits of his claims. *See Hurst v. Snider*, 530 F. App'x 168, 169 n.3 (3d Cir. 2013) ("Given the uncertainty regarding exhaustion, we have chosen to address the substance of Hurst's claims.") (citing *Nyhuis*, 204 F.3d at 69 n.4); *Gorrell v. Yost*, 509 F. App'x 114, 117 n.1 (3d Cir. 2013) ("Although the defendants argued that Gorrell had failed to exhaust his administrative remedies for this claim, the District Court chose to dismiss his claim without resolving the issue of exhaustion.") (citing *Nyhuis*, 204 F.3d at 69 n.4).

*ADA Claims*

The ADA makes it unlawful for public entities, including prisons, to discriminate against the disabled in the provision of services, programs and activities. *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)); *Chisholm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)). To state an ADA claim, the plaintiff must allege "that he is a 'qualified individual with a disability' [and] that he was excluded from a service, program, or activity of a public entity . . . because of

---

[25] Id. Ex. 1 at 2.

[26] Id. Ex. 1 at 4.

his disability." *Disability Rights N.J., Inc.*, 796 F.3d at 301 (quoting 42 U.S.C. § 12102(1)(A)). Mental illness is a disability under the ADA. 42 U.S.C. § 12102(1)(A).

Talley first alleges that the DOC, Wetzel and Griesemer violated the ADA by "punishing him in the same way other non-mentally ill inmates would have been punished" after he cut himself.[27] However, the documents attached to Talley's complaint show that his mental illness was why he was *not* punished. Talley was charged with threatening prison employees, refusing to obey orders, possession of contraband and destroying state property because he refused to relinquish the razor and threatened to cut anyone who opened his cell door.[28] But, because of his self-injurious behavior, a manifestation of his mental illness, the hearing examiner found him not guilty and dismissed the charges against him.[29]

Talley also alleges that Griesemer, Woodward, Schoeneberger, Kull, Aleman and Nash violated the ADA by denying him "psychological/psychiatric services/programming . . . on account of his 'disability' (i.e., mental infirmity/SIB [self-injurious behavior] and suicidal ideations)."[30] He claims that the defendants refused him psychological services because he has a psychological problem. Talley does not allege facts supporting this circular conclusion. In effect, he alleges only that the visits to his cell by Psychologist Nash, Nurse George and others who attempted to stop him from cutting himself constituted inadequate mental health treatment.[31] These allegations do not show

---

[27] *Id.* ¶ 29.

[28] *Id.* Ex. 1 at 2.

[29] *Id.* Ex. 1 at 4.

[30] *Id.* ¶ 31.

[31] *Id.* ¶¶ 11, 14-16, 18-21.

7

that he received inadequate or no treatment "by reason of" his disability. *See Brown v. Pa. Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) (quoting 42 U.S.C. § 12132); *see also Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012). Therefore, he fails to state a claim for violation of the ADA.

*Section 1983 Claims*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The DOC, as a state agency, is not a "person" under § 1983. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 847 (3d Cir. 2014). Nor do the facts pled by Talley establish a plausible constitutional violation against any individual defendant.[32]

Eighth Amendment Claims

Talley claims that bringing the misconduct charges violated the Eighth Amendment because they were "punishment[ ] for manifestations of his mental illness . . . ."[33] The Eighth Amendment prohibits punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (citing *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). To state a claim under the Eighth Amendment, a plaintiff must allege prison conditions that "deprived him of life's minimum necessities, that the deprivation was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." *Renchenski v. Williams*,

---

[32] We have already dismissed all § 1983 claims against the individual defendants in their official capacities. May 26, 2019 Order at 1.

[33] Compl. ¶ 29.

8

622 F.3d 315, 338 (3d Cir. 2010) (quotation omitted). "False misconduct charges themselves do not constitute the denial of 'basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety.'" *Booth v. Pence*, 354 F. Supp. 2d 553, 559 (E.D. Pa. 2005) (quoting *Griffin*, 112 F.3d at 709); *see also Hagan v. Chambers*, No. 1:08-CV-1766, 2010 WL 4812973, at *15 (M.D. Pa. Nov. 19, 2010) ("A false misconduct charge, standing alone, does not qualify as an Eighth Amendment violation.") (citing *Griffin*, 112 F.3d at 709) (additional citations omitted). Here, Talley does not allege that the charges resulted in the denial of any basic necessity.

Talley claims that the "refusal to contact psychological/psychiatric personnel" after he threatened suicide and cut himself also violated the Eighth Amendment.[34] The Eighth Amendment protection against cruel and unusual punishment extends to a prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 102, 103 (1976) (internal citations omitted). Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Id.* at 104–05.

To state an Eighth Amendment claim arising out of the failure to treat his medical condition, Talley must plead sufficient facts that, if proven, would establish two elements: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need. *Spruill*, 372 F.3d at 235-36.

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834

---

[34] *Id.* ¶ 33.

9

F.2d 326, 347 (3d Cir. 1987); *see also Atkinson v. Taylor,* 316 F.3d 257, 272-73 (3d Cir. 2003). A medical condition is serious when the denial or delay of medical treatment causes "unnecessary or wanton infliction of pain." *Monmouth Cty.*, 834 F.3d at 347.

Deliberate indifference to a serious medical need is shown when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible residual injury; or (3) an official intentionally refuses to provide care even though he is aware of the need for such care. *Spruill*, 372 F.3d at 235. A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety. It is not enough that the official is aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm. The official must actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

Talley's allegations do not show deliberate indifference. On the contrary, they demonstrate a lack of it. He claims that the defendants "left him in his cell unsupervised, for over an hour" after he had cut himself, instead of providing him with access to a mental health professional.[35] In contradiction to that allegation, he alleges that before he was treated by a medical professional a number of prison personnel attempted to coax the razor from him. Schoeneberger, Woodward, Aleman, Nash, George and Kull tried different methods to obtain the razor from him to prevent him from further cutting himself.[36] Their "primary concern remained with [Talley] giving up the razor."[37] After he

---

[35] *Id.* ¶ 32.

[36] *Id.* ¶¶ 11, 13-14, 16, 18, 20, 22.

[37] *Id.* ¶ 19.

10

did so, George attempted to treat Talley's superficial wounds in his cell.[38]  Talley refused to be treated in his cell and insisted on being treated in the medical facility.  Consequently, he was taken to medical triage where his cuts were cleaned.[39]

At most, Talley alleges a disagreement over his treatment.  He believes he should have been given access to "psychological/psychiatric personnel capable of evaluating" him.[40]  Instead, according to the complaint, the defendants attempted to coax him to give up the razor, and after he did, they provided him medical treatment for his superficial wounds.  Disagreement as to proper treatment does not establish an Eighth Amendment violation.  *Spruill*, 372 F.3d at 235-36.

The allegations in the complaint show that the defendants were not deliberately indifferent to Talley's suicidal threats and self-injurious behavior.  Rather, as alleged by Talley, they chose to handle them in a manner other than what he preferred.  Thus, we conclude Talley has failed to state an Eighth Amendment claim.

Fourteenth Amendment Claims

Talley alleges that lodging the misconduct charge violated the Fourteenth Amendment's Privileges and Immunities and Due Process Clauses.[41]  He has not stated a cause of action under either clause.

The Privileges and Immunities Clause reads: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. CONST. art. IV, § 2.  It "prevents a State from discriminating against citizens of other States in

---

[38] *Id.* ¶ 23, Ex. 1 at 1.

[39] *Id.* ¶ 23.

[40] *Id.* ¶ 33.

[41] *Id.* ¶¶ 34-35.

11

favor of its own." *Lee v. Minner*, 458 F.3d 194, 197 (3d Cir. 2006) (quoting *Hague v. CIO*, 307 U.S. 496, 511 (1939)), *abrogated on other grounds by McBurney v. Young*, 569 U.S. 221 (2013). Talley fails to allege that he is a citizen of a state other than Pennsylvania, let alone that he was treated differently for that reason.

Talley also alleges that the misconduct charge violated the Fourteenth Amendment's Due Process Clause.[42] The due process analysis starts with determining whether the liberty interest asserted is one that is protected by the Fourteenth Amendment. *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 482-83 (3d Cir. 2014) (quoting *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011)). If it is a protected interest, we must then determine what process is necessary to protect it. *Newman v. Beard,* 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted). If the interest is not protected, no process is necessary. Thus, at the threshold, the plaintiff must establish that he had a protected liberty interest that triggered due process rights. *See Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a liberty interest).

Prisoners have no Fourteenth Amendment right to be free "from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (quotation omitted). The Due Process Clause is satisfied where the prisoner receives an opportunity to be heard and defend against the improper misconduct charges. *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002). "[M]ere allegations of falsified evidence or misconduct reports,

---

[42] *Id.* ¶ 34.

12

without more, are not enough to state a due process claim." *Id.* (citing *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986)).

The allegations in the complaint show that Talley received due process. He had a hearing before a hearing examiner where he was permitted to provide his version of the events giving rise to the misconduct charges.[43] He pled not guilty on account of his self-injurious behavior and the hearing examiner agreed.[44] He was found not guilty, the charges were dismissed, and he received no punishment.[45] Thus, Talley has failed to state a Fourteenth Amendment violation.

*Breach of Contract Claim*

In the interest of convenience and judicial economy, we exercise our supplemental jurisdiction and consider Talley's state law breach of contract claim based upon this same misconduct charge. Talley claims that the DOC and Wetzel breached the Settlement Agreement in *Disability Rights Network of Pennsylvania v. Wetzel* by charging him with misconduct for cutting himself. He points to paragraph 27, which provides:

> An inmate who engages in Self-harm will not be subject to discipline for that behavior. Further, there will be no discipline for the possession or destruction of materials used for Self-harm unless such a sanction is approved by the Hearing Examiner Supervisor. Prior to approving a sanction for possession of contraband within this context, the Hearing Examiner Supervisor will consult with the Department's Chief Psychologist to determine the appropriateness of any such sanction.[46]

---

[43] *Id.* Ex. 1 at 2, 4.

[44] *Id.*

[45] *Id.* Ex. 1 at 4.

[46] Settlement Agreement at ¶ 27.

13

Even assuming Talley has standing to enforce the Settlement Agreement, it was not breached in this case. Although Talley was charged with destruction of state property and possession of contraband, he was found not guilty due to his self-injurious behavior.[47] He was not disciplined.[48] Thus, he has failed to state a claim for breach of the Settlement Agreement.

## Conclusion

Because Talley failed to state any claims, his complaint is dismissed with prejudice in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii). Any attempt to amend would be futile.

---

[47] Compl. Ex. 1 at ¶ 4.

[48] *Id.*